**158**

George J. Warmund, Brooklyn, N. Y., for plaintiff.

Hendler & Murray, New York City, for defendant.

BRUCHHAUSEN, District Judge.

The defendant moves for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the complaint upon the ground that it fails to state a claim upon which this Court may grant relief.

This action was commenced by the use-plaintiff, Hasco Electric Corp., to recover damages in the sum of $1,645.50.

The undisputed facts reveal that a prime contract was entered into between the United States of America and S. Puma Co., Inc., for the refurbishing of Building 17 Veteran's Administration Hospital, Northport, New York. Puma entered into a sub-contract with Harbig Contracting Corp. to supply and install electrical fixtures. Harbig in turn contracted with Loewy Lighting Co., Inc.,

**UNITED STATES of America, For the Use and Benefit of HASCO ELECTRIC CORP., Plaintiff,**

v.

**RELIANCE INSURANCE COMPANY, Defendant.**

No. 74 C 1503.

United States District Court, E. D. New York.

Feb. 13, 1975.

to supply the fixtures. Loewy then contracted with the use-plaintiff, Hasco Electric Corp., which agreed to supply the electrical fixtures for this job.

■ The question presented is whether, under the Miller Act, a materialman, Hasco Electric Corp., the use-plaintiff, supplying materials pursuant to contract with a materialman, Loewy Lighting Co., which contracted with Harbig Contracting Corp. to supply electrical fixtures that Harbig Contracting Corp. agreed to furnish as a subcontractor to the prime contractor, S. Puma Co., Inc., and to which an unpaid balance is due from the materialman can recover on the payment bond required for this work.

The answer to this question is no. See MacEvoy & Co. v. United States, for the Use and Benefit of Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163.

This action was commenced pursuant to the Miller Act, 40 U.S.C. 270a(a)(2), which requires every government contractor, where the amount of the contract exceeds $2,000.00, to furnish to the United States a payment bond with a surety "for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person."

40 U.S.C. 270b(a) provides that "every person who has furnished labor and material in the prosecution of the work provided for in such contract * * * and who has not been paid in full therefor [within] ninety days after the last labor was performed or material supplied may bring suit on the payment bond for the unpaid balance provided, however, that any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made . . . ."

The Court in MacEvoy Co. v. United States, supra, held in part 322 U.S. at pages 107–108, 64 S.Ct. at page 894:

"The proviso of Section 2(a), which had no counterpart in the Heard Act, makes clear that the right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and subcontractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act."

The use-plaintiff at bar did not deal directly with S. Puma Co., Inc., the prime contractor. Secondly, the subcontractor, Harbig Contracting Corp., was to supply and install electrical fixtures. Harbig then contracted with Loewy Lighting Co., Inc., to supply the fixtures. Finally, Loewy contracted with the use-plaintiff, Hasco Electric Corp. to supply the fixtures. It is argued by the use-plaintiff that Loewy was a mere conduit from the subcontractor, Harbig to Hasco, and that the use-plaintiff was dealing with the subcontractor, Harbig, thereby protected under the Act. The use-plaintiff has attached to its opposing affidavit, a Miller Act pamphlet Exhibit A–1, relying on the terminology contained therein. The third question on that exhibit, Am I protected by the payment bond? The answer, "You are protected if you supply labor or material directly for use by a contractor or one of his subcontractors in performing the work, provided for in the contract. You are also protected if you deal directly with a subcontractor without any con-

tractual relation, express or implied, with the Government contractor who furnished the bond. It should be noted that the act does not protect materialmen who supply other materialmen who, in turn, may serve prime or subcontractors on the job. (See Mac Evoy v. United States to the use of Tomkins, 322 U. S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944))."

Here, the use-plaintiff is a materialman who sold to another materialman, Loewy, who in turn sold to Harbig, the subcontractor, who in turn contracted to supply the general contractor with these fixtures. The use-plaintiff did not heed the admonition found in its own Exhibit A–1 which clearly warns that the Miller Act does not protect materialmen who supply other materialmen who, may serve prime or subcontractors on the job.

In Mac Evoy Co., the Court held in part 322 U.S. at page 110, 64 S.Ct. at page 895:

" * * * Congress cannot be presumed, in the absence of express statutory language, to have intended to impose liability on the payment bond in situations where it is difficult or impossible for the prime contractor to protect himself. The relatively few subcontractors who perform part of the original contract represent in a sense the prime contractor and are well known to him. It is easy for the prime contractor to secure himself against loss by requiring the subcontractors to give security by bond, or otherwise, for the payment of those who contract directly with the subcontractors. Cases cited. But this method of. protection is generally inadequate to cope with remote and undeterminable liabilities incurred by an ordinary materialman, who may be a manufacturer, a wholesaler or a retailer. * * * To impose unlimited liability under the payment bond to those sub-materialmen and laborers is to create a precarious and perilous risk on the prime contractor and his surety. To sanction such a risk requires clear language in the statute and in the bond so as to leave no alternative. Here the proviso of Section 2(a) of the Act forbids the imposition of such a risk, thereby foreclosing Tomkins' right to sue on the payment bond."

There has been no evidence offered indicating that Loewy was a subcontractor. On the contrary, the opposing affidavit at page 3 clearly establishes that Loewy was merely a distributor/broker who ordered materials from the use-plaintiff, a materialman.

It follows, therefore, that the use-plaintiff Hasco Electric Corp., is not entitled to the protection of the Miller Act. It is merely a remote materialman and does not qualify to bring suit upon the bond.

The motion to dismiss the complaint is granted.

It is so ordered.